Filed:  August 8, 1997

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 96-4827
(CR-95-39-WMN)

United States of America,

Plaintiff - Appellee,

versus

Darryl Jamison,

Defendant - Appellant.

O R D E R

The Court amends its opinion filed July 28, 1997, as follows:

On the cover sheet, section 3, line 3 -- "William M. Nickerson, District Judge" is corrected to read "Herbert N. Maletz, Senior Judge, sitting by designation."

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 96-4827

DARRYL JAMISON,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Herbert N. Maletz, Senior Judge,
sitting by designation.
(CR-95-39-WMN)

Submitted: July 8, 1997

Decided: July 28, 1997

Before HALL, MURNAGHAN, and HAMILTON, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Paul R. Kramer, PAUL R. KRAMER, P.A., Baltimore, Maryland, for
Appellant. Lynne A. Battaglia, United States Attorney, Gregory
Welsh, Assistant United States Attorney, Baltimore, Maryland, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Appellant Darryl Jamison was convicted pursuant to his guilty plea of one count of conspiracy to distribute and possession with intent to distribute heroin. On appeal, he challenges the district court's rulings denying his motion to suppress incriminating statements he made to federal agents and denying his motion for a downward departure in determining his sentence under the Sentencing Guidelines.[1] Finding no reversible error, we affirm.

In 1990, Jamison was arrested and charged with nine federal felony drug counts in the Eastern District of Pennsylvania. He entered into an agreement with authorities in which he acted as an informant over the next four years. As part of the agreement, he was allowed to relocate to the Baltimore area for his safety. Unbeknownst to the authorities in Pennsylvania, Jamison began trafficking heroin shortly after his arrival in Baltimore.

In late November 1994, Jamison believed that the FBI was investigating his drug trafficking organization. He and an accomplice ("Johnson") contacted FBI Special Agent Sheehy and arranged a meeting. During the meeting, Jamison and Johnson asked for information on any pending indictments and offered to exchange information about at least one major heroin supplier and to act as informants in return for a grant of immunity. Sheehy informed Jamison and Johnson that he did not have the authority to grant the type of immunity they requested. Jamison and Johnson contacted Sheehy several times over the next several days, each time making additional incriminating statements and receiving the same response from Sheehy concerning immunity. Sheehy had no further contact with Jamison until January 1995.

Not satisfied with the treatment being given by the FBI, Jamison contacted DEA Special Agent Hladun and again offered to exchange information for immunity. Hladun informed Jamison that only a rep-

_____

[1] United States Sentencing Commission, <u>Guidelines Manual</u> (Nov. 1995).

resentative from the United States Attorney's Office could accept such an offer. However, Hladun initiated steps to make Jamison an informant. Since Jamison was on probation for his crimes in Pennsylvania, his probation officer and the United States Attorney's Office sought and obtained permission from a district judge for him to be used as an informant. Neither Hladun nor the Assistant United States Attorney assigned to the case informed Jamison that his use as an informant was approved.**2**

In early January 1995, Sheehy and officers from a violent crimes task force executed a state search warrant on Jamison's residence. During the search, in which large sums of cash, weapons, and documents were seized, Jamison was advised of his rights and initially declined to make any statements. However, after a short while, Jamison informed Sheehy that he wanted to talk to him, and Sheehy took him to a nearby state police barracks. There, he was again advised of his rights; Jamison waived them and agreed to be interviewed.**3** Jamison made several incriminating statements during the interview.

Jamison filed a motion to suppress his statements prior to trial, alleging that they were involuntarily made because he was under the false impression that he had been granted immunity. After a lengthy hearing, during which the court heard testimony from numerous witnesses, the court denied the motion. Jamison then pled guilty, reserving his right to appeal the court's denial of his suppression motion.

We review the district court's findings of fact for clear error and the ultimate suppression decision de novo, United States v. Rusher, 966 F.2d 868, 873 (4th Cir. 1992), and we find no error in the present case. Coercive police activity is a necessary predicate to finding a confession involuntary. Colorado v. Connelly, 479 U.S. 157, 167 (1986). While Jamison asserts that federal agents engaged in coercive police activity when they led him to believe that he would be granted

_____

**2** However, Jamison's probation officer informed him of the approval in late December. Nevertheless, Jamison was never given a grant of immunity from prosecution for his crimes committed prior to December 1994.

**3** Jamison also told officers that he was not represented by counsel, nor did he want one at that time.

3

immunity, the district court expressly found Jamison's version of the facts incredible. We find that the record supports this credibility determination, and we will not disturb it on appeal. Since the facts as determined by the district court fail to show coercive police activity, we affirm its ruling that Jamison's statements were voluntary and should not have been suppressed.

Jamison was advised of his <u>Miranda</u>**4** rights during the search of his residence and again prior to his interview with Sheehy. On appeal, he claims that these warnings were insufficient to render his confession voluntary. He bases his claims on his belief that he had been granted immunity, a belief the district court found unsupported. Since we find no error in the admission of Jamison's confession, we decline to address this issue.

Finally, Jamison asserts that the district court erred by denying his motion for a downward departure based on his substantial assistance and voluntary disclosure. We find that the district court properly recognized its authority to grant the motion, but declined to do so under the facts of this case. Accordingly, this issue is not reviewable. <u>See</u> <u>United States v. Bayerle</u>, 898 F.2d 28, 30-31 (4th Cir. 1990).

We therefore affirm Jamison's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the material before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

---

**4** <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

4